## UNITED STATES DISTRICT COURT
## FOR DISTRICT OF NEW JERSEY

PATRICK BYRD, on behalf of himself and all others similarly situated,

                                Plaintiff,

v.

TRUE WORLD HOLDINGS, LLC d/b/a TRUE WORLD GROUP, LLC,

                                Defendant.

CASE NO.

CLASS ACTION COMPLAINT

**JURY DEMAND**

## CLASS ACTION COMPLAINT

Plaintiff, Patrick Byrd ("Plaintiff"), on behalf of himself and all others similarly situated, states as follows for his class action complaint against Defendant True World Holdings, LLC d/b/a True World Group, LLC ("True World" or "Defendant"):

## INTRODUCTION

1.     On or around August 23, 2024, True World became aware that it had lost control over its computer network and the highly sensitive personal information stored on the computer network in a data breach by cybercriminals ("Data Breach"). On information and belief, the Data Breach has impacted at least 8,532 individuals, including Defendant's current and former employees.[1]

2.     True World is a "one of the nation's leading, diversified seafood-products companies" and employs over 1,000 individuals.[2]

3.     On or about August 23, 2024, Defendant learned cybercriminals gained

---

[1] Data breach Notification Cover Sheet, Office of the Maine Attorney General, https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/a349c086-b4fd-474a-9da1-9c2f5b02a6ab.html (last visited December 2, 2024).
[2] True World Group Overview, LinkedIn, https://www.linkedin.com/company/true-world-group-llc/about/ (last visited December 2, 2024).

unauthorized access to current and former employees' personally identifiable information ("PII"), including but not limited to their names, Social Security numbers, and dates of birth.

4. On or about November 1, 2024–more than two months after the Data Breach was discovered– Defendant finally began notifying Plaintiff and Class Members about the Data Breach ("Breach Notice"). An example of the Breach Notice is attached as Exhibit A.

5. Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the Class's PII—rendering them easy targets for cybercriminals.

6. Defendant's Breach Notice obfuscated the nature of the breach and the threat it posed—refusing to tell its current and former employees how many people were impacted, how the breach happened, or why it took the Defendant over two months to begin notifying victims that cybercriminal had gained access to their highly private information.

7. Defendant's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their PII.

8. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

9. In failing to adequately protect current and former employees' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed a staggering number of employees.

10. Plaintiff and the Class are victims of Defendant's negligence and inadequate

2

cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their PII. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

11.    Plaintiff is a former employee of Defendant and is a Data Breach victim.

12.    The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

## PARTIES

13.    Plaintiff, Patrick Byrd, is a natural person and citizen of Illinois, residing in West Chester, Illinois where he intends to remain.

14.    Defendant True World Holdings, LLC d/b/a True World Group, LLC is a Limited Liability Company with its headquarters at 24 Link Drive, Rockleigh, New Jersey 07647.

## JURISDICTION & VENUE

15.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are over 100 putative Class Members. Plaintiff and Defendant are citizens of different states.

16.    This Court has personal jurisdiction over Defendant because Defendant maintains its headquarters in New Jersey, and regularly conducts business in New Jersey.

17.    Venue is proper in this Court under because Defendant's headquarters is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

*True World*

18.     True World touts itself as "one of the nation's leading, diversified seafood-products companies." It processes and manufactures seafood products, owns Japanese retailers, and supplies food establishments with seafood products.[3] True World's subsidiaries include True World Marine, True World Foods, True World Restaurants, and True World Market.[4]

19.     As part of its business, Defendant receives, collects, and maintains the highly sensitive PII of its current and former employees. In doing so, Defendant implicitly promises to safeguard their PII.

20.     After collecting its employees' PII, Defendant maintains the PII in its computer systems. On information and belief, Defendant maintains former employees' PII for years after the relationship is terminated.

21.     In collecting and maintaining employees' PII, Defendant agreed it would safeguard the data in accordance with its internal policies as well as state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

22.     Defendant understood the need to protect its employees' PII and prioritize its data security.

23.     Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonably cybersecurity safeguards or policies to protect employees' PII or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees' PII.

***The Data Breach***

---

[3] *Id.*
[4] True World Group Announces Data Breach Affecting Current and Former Employees, JDSUPRA, https://www.jdsupra.com/legalnews/true-world-group-announces-data-breach-3570552/ (last visited December 2, 2024).

24.     Plaintiff is a former employee of True World, having worked for Defendant between approximately 2008 and 2015.

25.     As a condition of receiving employment with True World, employees were required to disclose their PII to Defendant, including but not limited to, names, Social Security numbers, and dates of birth. Defendant used that PII to facilitate employment of Plaintiff, including payroll, and required Plaintiff to provide that PII to obtain employment and payment for that employment.

26.     On information and belief, True World collects and maintains current and former employees' unencrypted PII in its computer systems.

27.     In collecting and maintaining PII, True World implicitly agrees it will safeguard the data using reasonable means according to its internal policies and federal law.

28.     According to the Breach Notice, Defendant claims that on August 23, 2024 it "identified unusual activity involving certain systems and servers within its network." Ex. A. Due to Defendant's obfuscating information, it is unclear when the Data Breach began or how long cybercriminals had access to Plaintiff's and the Class's most sensitive information.

29.     In other words, the Data Breach investigation revealed True World's cyber and data security systems were completely inadequate and allowed cybercriminals to access files containing a treasure trove of its employees' highly private information.

30.     Additionally, Defendant admitted that PII was actually stolen during the Data Breach, confessing that its investigation revealed that "certain files were *copied* from True World's network as part of this incident by unauthorized actors," suggesting that data was acquired and removed from True World's system. Ex. A.

31.     Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's PII for theft and sale on the dark web.

32.     On or about November 1, 2024– ten weeks after Defendant discovered the Data Breach– Defendant finally began notifying Plaintiff and Class Members about the Data Breach.

33.     Thus, Defendant kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

34.     And when Defendant did notify Plaintiff and the Class of the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, stating "[w]e are notifying you at this time to make you aware of this security incident so you can understand what happened, what we are doing to address it, and the steps you can take to remain vigilant and enhance the protection of your personal information, including activating complimentary identity monitoring." Ex. A.

35.     Further, Defendant encouraged Plaintiff and the Class to:

a.  "remain vigilant, including carefully reviewing account statements and credit reports;"

b.  "change your username, password, and/or security questions relevant to your financial accounts and other personal accounts;"

c.  "in the event there is any suspicious activity in any of your accounts or you suspect you are the victim of identity theft, you should promptly notify the financial institution where the account is maintained and report the activity to the proper law enforcement authorities"

d.  "obtain a copy of your credit report;"

e.  "ask that an initial fraud alert be placed on your credit report if you suspect you have been, or are about to be, a victim of identity theft;"

f.  "have an extended alert placed on your credit report if you have already been a victim of identity theft;" and

       g.    "place a security freeze also known as a credit freeze, on your credit report." Ex.

           A.

36.      Despite its duties and alleged commitments to safeguard PII, Defendant did not in fact follow industry standard practices in securing employees' PII, as evidenced by the Data Breach.

37.      In response to the Data Breach, Defendant contends that it is "working to identify vulnerabilities in our systems and implement appropriate remedial action." Ex. A. Although Defendant does not elaborate on what these "remedial actions" are, such steps should have been taken before the Data Breach.

38.      On information and belief, Defendant has several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers.

39.      Even with several months of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

40.      Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

41.      On information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its employees' PII. Defendant's

negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of Which Defendant was on Notice***

42.    It is well known that PII, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

43.    In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[5]

44.    In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), True World knew or should have known that its electronic records would be targeted by cybercriminals.

45.    Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

46.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite its own acknowledgment of its duties to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

47.    In the years immediately preceding the Data Breach, Defendant knew or should have known that its computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible

---

[5]    Data breaches break record in 2021, CNET (Jan. 24, 2022), https://www.cnet.com/news/privacy/record-number-of-data-breaches-reported-in-2021-new-report-says/  (last visited December 2, 2024).

via the internet.

48.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[6]

49.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[7]

50.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary forms of extortion."[8]

51.     This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web

---

[6]     October     02,     2019     Public     Service     Announcement,     FBI, https://www.ic3.gov/Media/Y2019/PSA191002  (last visited December 2, 2024).
[7] Ransomware Mentioned in 1,000+ SEC Filings Over the Past Year, ZDNET (April 30, 2020), https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last visited December 2, 2024).
[8] Stop Ransomware Guide, CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last visited December 2, 2024).

portals, and (iv) ransomware tactics included threatening to release stolen data.

52.    In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of thousands of its employees in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII.

53.    Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

54.    Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its employees' Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff's Experience and Injuries***

55.     Plaintiff Patrick Byrd is a former employee of True World, having worked for Defendant between approximately 2008 and 2015.

56.    As a condition of employment, True World required Plaintiff to provide his PII, including but not limited to his full name, Social Security number, and date of birth.

57.    Plaintiff provided his PII to True World and trusted that the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law.

58.    Upon information and belief, Plaintiff has not been involved in any previous data breaches.

59.    Plaintiff suffered actual injury from the exposure of his PII —which violates his rights to privacy.

60.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

61.    As a result of its inadequate cybersecurity, Defendant exposed Plaintiff's PII for theft by cybercriminals and sale on the dark web.

62.    Defendant also deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it in a timely manner.

63.    As a result of the Data Breach notice, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred, and contacting counsel. This time has been lost forever and cannot be recaptured.

64.    Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from additional identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach.

65.    Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

66.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII —a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

67.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being

placed in the hands of unauthorized third parties and possibly criminals.

68.    Indeed, following the Data Breach, Plaintiff began experiencing a substantial increase in spam and scam phone calls and text messages, suggesting that his PII has been placed in the hands of cybercriminals.

69.    On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach, as cybercriminals are able to use an individual's PII that is accessible on the dark web, as Plaintiff's is here, to gather and steal even more information.[9]

70.    Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

71.    Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

72.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the Class have suffered or are at an increased risk of suffering:

  a.  The loss of the opportunity to control how their PII is used;

  b.  The diminution in value of their PII;

  c.  The compromise and continuing publication of their PII;

  d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

  e.  Lost opportunity costs and lost wages associated with the time and effort

---

[9] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited December 2, 2024).

expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.   Delay in receipt of tax refund monies;

g.   Unauthorized use of stolen PII; and

h.   The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in its possession.

73.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

74.    The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

75.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

76.    It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

77.    One such example of criminals using PII for profit is the development of "Fullz" packages.

78.    Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

79.    The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and the Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

80.    Defendant disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII. Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

81.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

82.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

     a.   protect the personal customer information that they keep;

     b.   properly dispose of personal information that is no longer needed;

     c.   encrypt information stored on computer networks;

     d.   understand its network's vulnerabilities; and

     e.   implement policies to correct security problems.

83.     The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

84.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

85.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer, data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must

take to meet its data security obligations.

86.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

87.     Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

88.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

89.     Upon information and belief, True World failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

90.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

91.     Plaintiff sues on behalf of himself and the proposed nationwide class ("Class"),

defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> All individuals residing in the United States whose PII was
> compromised in the Data Breach discovered by True World in
> August 2024, including all those individuals who received notice
> of the breach.

92.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries,

any entity in which Defendant has a controlling interest, any of Defendant's officers or directors,

any successor or assign, and any Judge who adjudicates this case, including their staff and

immediate family.

93.     Plaintiff reserves the right to amend the class definition.

94.     This action satisfies the numerosity, commonality, typicality, and adequacy

requirements under Fed. R. Civ. P. 23.

a.     **Numerosity**. The members of the Class are so numerous that joinder of all

members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class

includes 8,532 current and former employees who have been damaged by Defendant's conduct

as alleged herein.

b.     **Ascertainability**. Members of the Class are readily identifiable from

information in Defendant's possession, custody, and control;

c.     **Typicality**. Plaintiff's claims are typical of class claims as each arises

from the same Data Breach, the same alleged violations by Defendant, and the same

unreasonable manner of notifying individuals about the Data Breach.

d.     **Adequacy**. Plaintiff will fairly and adequately protect the proposed

Class's interests. His interests do not conflict with the Class's interests, and he has retained

counsel experienced in complex class action litigation and data privacy to prosecute this action

on the Class's behalf, including as lead counsel.

        e.    **Commonality**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

        i.    Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

        ii.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

        iii.    Whether Defendant was negligent in maintaining, protecting, and securing PII;

        iv.    Whether Defendant breached contract promises to safeguard Plaintiff's and the Class's PII;

        v.    Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

        vi.    Whether Defendant's Breach Notice was reasonable;

        vii.    Whether the Data Breach caused Plaintiff's and the Class's injuries;

        viii.    What the proper damages measure is; and

        ix.    Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

95.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs are insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

96.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

97.    Defendant owed to Plaintiff and the Class a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

98.    Defendant owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

99.    Defendant owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

100.    Defendant owed these duties to Plaintiff and members of the Class because they

are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff's and the Class's personal information and PII.

101.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant holds vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII—whether by malware or otherwise.

102.    PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class and the importance of exercising reasonable care in handling it.

103.    Defendant breached its duties by failing to exercise reasonable care in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff's and members of the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff's and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

104.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost value of their PII, and lost time and money

incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**Count II**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

105.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

106.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant has a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

107.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the Class's sensitive PII.

108.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

109.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of its failure to employ reasonable data security measures and avoid unfair and deceptive

practices, caused the same harm as that suffered by Plaintiff and the Class.

110. Defendant has a duty to Plaintiff and the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's PII.

111. Defendant breached its duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

112. Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se.*

113. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and the Class would not have been injured.

114. The injury and harm suffered by Plaintiff and the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

115. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

**Count III**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

116. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

117.    Given the relationship between Defendant and Plaintiff and Class Members, where Defendant became guardian of Plaintiff's and Class Members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' PII; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

118.    Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with them—especially to secure their PII.

119.    Because of the highly sensitive nature of the PII, Plaintiff and Class Members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known the reality of Defendant's inadequate data security practices.

120.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class Members' PII.

121.    Defendant also breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

122.    As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**Count IV**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

123.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

124.   Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving employment and/or services from Defendant. Plaintiff and Class Members provided their PII to Defendant in exchange for Defendant's employment and/or services.

125.   Plaintiff and Class Members reasonably understood that a portion of the funds from their employment or a portion of their payment to Defendant in exchange for services would be used by Defendant used to pay for adequate cybersecurity and protection of their PII.

126.   Plaintiff and the Class Members accepted Defendant's offers by disclosing their PII to Defendant in exchange for employment and/or services.

127.   Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

128.   In providing their PII, Plaintiff and Class Members entered into an implied contract with Defendant whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' PII.

129.   In delivering their PII to Defendant, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

130.   Plaintiff and the Class Members would not have entrusted their PII to Defendant in the absence of such an implied contract.

131.   Defendant accepted possession of Plaintiff's and Class Members' PII.

132.   Had Defendant disclosed to Plaintiff and Class Members that Defendant did not

have adequate computer systems and security practices to secure employees' PII, Plaintiff and members of the Class would not have provided their PII to Defendant.

133. Defendant recognized that employees' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

134. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

135. Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard their data.

136. Defendant breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their PII.

137. As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' PII; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their PII; and (h) the continued and substantial risk to Plaintiff's and Class Members' PII, which remains in the Defendant's possession with inadequate measures to protect Plaintiff's and Class Members' PII.

**COUNT V**
**Invasion of Privacy — Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and the Class)**

138.    Plaintiff and members of the Classes incorporate the above allegations as if fully set forth herein.

139.    Plaintiff and the Class had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

140.    Defendant owed a duty to its employees, including Plaintiff and the Class Members, to keep their PII confidential.

141.    Defendant failed to protect said PII and exposed the PII of Plaintiff and the Class Members to unauthorized persons which is now publicly available, including on the dark web, and being fraudulently misused.

142.    Defendant allowed unauthorized third parties access to and examination of the PII of Plaintiff and the Class Members, by way of Defendant's failure to protect the PII.

143.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and the Class Members is highly offensive to a reasonable person.

144.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and the Class Members PII was disclosed to Defendant as a condition of receiving employment and/or services, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and the Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

145.   The Data Breach constitutes an intentional or reckless interference by Defendant with Plaintiff's and the Class Members' interests in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

146.   Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because they had actual knowledge that its information security practices were inadequate and insufficient.

147.   Defendant acted with reckless disregard for Plaintiff's and Class Members' privacy when they allowed improper access to its systems containing Plaintiff's and Class Members' PII.

148.   Defendant was aware of the potential of a data breach and failed to adequately safeguard their systems and implement appropriate policies to prevent the unauthorized release of Plaintiff's and Class Members' PII.

149.   Because Defendant acted with this knowing state of mind, they had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Class Members.

150.   As a proximate result of the above acts and omissions of Defendant, the PII of Plaintiff and the Class Members was disclosed to third parties without authorization, causing Plaintiff and the Class Members to suffer injury and damages as set forth herein, including monetary damages, fraudulent misuse of their PII and fraudulent charges; loss of the opportunity to control how their PII is used; diminution in value of their PII; compromise and continuing publication of their PII; and are entitled to compensatory, consequential, and incidental damages as a result of the Data Breach.

151.    Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class Members in that the PII maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class Members.

**Count VI**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

152.    Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

153.    This claim is pleaded in the alternative to the breach of implied contractual duty claim.

154.    Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII.

155.    Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

156.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and the Class, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

157.    Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that

are mandated by industry standards.

158.   Defendant acquired the monetary benefit and PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

159.   If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

160.   Plaintiff and Class Members have no adequate remedy at law.

161.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) the loss of the opportunity how their PII is used; (ii) the compromise, publication, and/or theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

162.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm.

163.   Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**PRAYER FOR RELIEF**

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.  Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.  Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting such other or further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands that this matter be tried before a jury.

Date: December 5, 2024                    Respectfully submitted,

By:     /s/ Patrick Howard
        Patrick Howard (NJ Atty ID #02280-2001)
        **SALTZ MONGELUZZI &**
        **BENDESKY, P.C.**
        8000 Sagemore Drive, Suite 8303
        Marlton, NJ 08053
        Tel: (215) 575-3895
        phoward@smbb.com

        Samuel J. Strauss*
        Raina C. Borrelli*
        **STRAUSS BORRELLI PLLC**
        980 N. Michigan Avenue, Suite 1610
        Chicago, Illinois 60611
        T: (872) 263-1100
        F: (872) 263-1109
        sam@straussborrelli.com
        raina@straussborrelli.com

        *Pro hac vice forthcoming*
        *Attorneys for Plaintiff and Proposed Class*